Good morning or afternoon. Glenn Dannis for Appellants Post and Gray. I guess what I'd like to start with is the fact that when we were in this court a couple of years ago, the court had directed the district court on remand to look into two main issues. One is to whether or not California law embraces a pure omission theory of liability in the non-warranty context. And second, whether California law creates a duty to disclose what Toyota knew from internal testing about the actual fuel MPG of the Toyota Prius and failed to disclose. The district court on remand immediately went into failure to disclose cases in the warranty context. It did not ever endeavor to look at pure omission cases and whether, in fact, California has or recognizes a pure omission cause of action. The district court immediately looked into whether California law has a duty to disclose what Toyota knew from internal testing about the actual fuel MPG of the Toyota Prius and failed to disclose. The district court immediately went to Daugherty, which is a case involving latent product defects that only manifested themselves outside of the warranty period. It then went on to Barden, O-Striker, Harmonix and Smith v. Ford, all cases that were product latent product defect cases that involved an allegation of a latent product defect that manifested outside of the warranty period and therefore required that there be a safety issue or an affirmative case. The district court brushed aside Falk, the Falk case, saying that it was inapplicable because Falk involves safety and this case does not. And then it brushed aside the most recent and directly on point E-Machine, Collins v. E-Machine case, dismissing it as a warranty case when, in fact, it was not a warranty case. Under the UCL conduct that is likely to deceive, a reasonable consumer satisfies the prong, the fraud prong of that statute. And materiality is the limiting principle. So materiality and likely to deceive are all that is required under the fraud prong of the UCL in order to state a cause of action. Under the UCL, as articulated in the Day case, a perfectly true statement couched in such a manner that it's likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections. Counsel, I have a more fundamental question that I want to ask. Is it true that the plaintiffs in this case don't seek to represent anyone who bought a lease to Prius in California? That's correct, Your Honor. So I'm curious as to how non-California residents can pursue a claim under the CLRA or the UCL. I thought those were expressly precluded under California law. Well, I think, Your Honor, I might be referring to the Mazza case. And this was something that actually was not. Mazza had come down, I believe, eight days before the hearing on the motion to dismiss on remand and was something that the district court didn't reach. During the hearing on the motion to dismiss, the district court, when my able opposing counsel attempted to raise the issue, said, we're simply, why don't you just put a period there? We're not going to get into that. Okay. So assuming that we want to go beyond that period, what do you say about the holding in Mazza and whether or not that precludes the plaintiff's claims? Well, I think, Your Honor, it's just not properly teed up. I mean, basically, there would need to be a... It's an issue of law. It is an issue of law that hasn't really been briefed here, certainly wasn't briefed or decided below, and really was not briefed here, even by Toyota. No party in the appellate briefs did the appropriate choice of law analysis looking at the different states' interest in having their law apply. I know that Toyota did cursorily say that two different sets of laws or the laws of New York and Washington have safe harbor provisions. Neither party briefed it. I know that Toyota attempted to buttress its point by citing to a Florida and Arkansas case. It's unclear how Florida and Arkansas cases would support the fact that New York and Washington have safe harbor provisions. Why does it have to be a conflicts of law issue if the California statutes upon, regardless of how this conflict of law analysis came out, you're still seeking to apply California law to the California statute? Why does it have to be a conflicts of law issue if the California statute upon, regardless of how this conflict of law analysis came out, you're still seeking to apply California law to non-California residents? And I think Mazza says you can't do that. So regardless of how the choice of law issue comes out, why wouldn't Mazza preclude the lawsuit from going forward at all? Well, my understanding, Your Honor, is that where you have the nexus of the action being in California, and in this case, it's undisputed that Toyota is located here and employed internal research people, as well as the California statute. And so we have a very, very broad network of lawyers and advertising firms in California where we would submit and we allege that the nexus of the wrong occurred in California, that there was no barred extraterritorial application of the CRL. Counsel, if I could interject, it's hard to remember all the details of every case we sat on, but I'm pretty sure I wrote the Mazza opinion. And I'm pretty sure that Mazza is the one who wrote the Mazza opinion. And I'm pretty sure that the things you're saying now were probably true in that case, too. That is that the car manufacturer had major offices in California, and there was a claim nexus to California, and an interest of California having their law apply to any claim brought in their forum. But that case talked about, if I'm remembering this right, that also other states would have an interest in the law of their state supplying, you know, to purchases made in their state. And, you know, some state might want to have more strict or more liberal pilot's liability. But I think that Mazza is one of those laws to try to entice people to come to their state and do business. So that I was really kind of at a loss when I read in the briefing, in the transcript, that the judge said, leave Mazza for another day, and I wonder if it was just that I was too close to it, but I didn't know how you could quite leave for another day which law applies. That's a very good question, Your Honor. I think that it probably should have been, in retrospect, an issue that was decided below, and something that we were given supplemental briefing on. We were never given an opportunity to brief the impact of the very important Mazza decision when we were below in the district court. I'm not even saying it's very important. It might be wrong. But, see, like in this case, as the case is presented in the briefs, I see a big major issue, whether California law would apply the Falk-Lamondry test or the Darby-Barden test. And then I ask myself, well, why should we certify that to the state Supreme Court and let them resolve it? But then I wonder, well, why should we certify a case to an issue, to the California Supreme Court, when the plaintiffs bought their cars in Washington and New York, and I'm not sure California law should really be applied to that? Well, I have to say that all that I know about that issue is that California does not have the safe harbor provision. That does other states have. If, I would submit that the analysis would be entirely different than the way that this case has been briefed in either court, if California law were held not to apply. I really, I'm sorry, I just can't speak more to it. We would be happy to do supplemental briefing on that for the courts, if the court would prefer, in order to be able to determine that. I'm just, I'm not an expert in the New York safe harbor, and it just wasn't briefed. So I apologize to the court about that. I don't know about the, I'm sorry, Judge Gould. I was just going to say, no apologies needed, and you should go ahead, Judge Rollins. I was just going to say that to me, I can't speak for the other members of the panel, but to me, the Maza issue is dispositive of this case. I just don't see that the California legislature intended for its consumer protection laws to have extraterritorial effect, regardless of the choice of law issue. So maybe we can hear from Toyota and see if we can be further enlightened, and then we'll give you the opportunity to come back. Thank you very much. I think it's officially good afternoon, Your Honors. Michael Malo, lobe and lobe on behalf of the Toyota defense here before you again. I joked around that this is my birthday present from the Ninth Circuit, so. Happy birthday. Thank you. Judge Gould, let me see if I can, by the way, your memory is excellent on the case you wrote, but here's how we presented the argument before Judge Gutierrez as it related to the conflict of law. I think counsel misspoke when he said that Toyota did not brief the conflict of law issue to Judge Gutierrez. In fact, excerpt of record, it looks like your... I thought you had raised it in your briefs, but then when you're at oral argument, the sense I have, and maybe it's an old sense for litigation, was that Toyota felt from something maybe that was said, that the judge was going to get rid of the case under Paduano. And so when Mazza came up, just told the judge, as far as you were concerned, it could be for another day. Well, I think the response was, and again, I'm working off of my memory as well, Your Honor, but it was, the first question is, is there actually a... And based on the Paduano decision, which Toyota believes is the beginning and end to the plaintiff's claims related to MPG, miles per gallon, there is no conflict between the laws of California, Washington, and New York. So if there's no conflict between the laws, if the law is the same, doing a conflict of law analysis, as Your Honor did in Mazza, is unnecessary. That being said, we did indicate to Judge Gutierrez in the briefing, if you think that California law yields a different result than New York or Washington, that both have safe harbors and would preclude plaintiff's claims, then we need to look at that conflict of law analysis. And that would be essentially the Mazza analysis. There is a difference in the laws, which state's interest is paramount, and as Your Honor articulated in Mazza, the law where the consumer has purchased the vehicle, that law, the state of that jurisdiction would have a bigger, a more significant interest in applying the laws of its own state than perhaps what is being applied in California. But in this case, there is no distinction. The result, Paduano essentially creates the same result as you would get in Washington and New York. Even if we got to California law being applied here, would it apply in this case? Would the consumer protection laws of California apply to the facts of this case where non-California residents purchased vehicles outside California? The answer is California law would not apply. If you're doing a conflict of laws analysis, bottom line, the law would not apply to this case. The Mazza decision makes it much easier for us to just turn around and say, hey, these consumers bought their cars in New York and Washington, California law doesn't apply. But when we were first briefing this case, we didn't have the benefit of Mazza. You had the Norwest decision that kind of led to some confusion, you know, Norwest holding that. If there is sufficient California context, it wouldn't violate due process to apply California law, and in that situation, then you do your conflict of law analysis. So basically, the first step on the conflict of law analysis is the law different. And that's how we ended up where we ended up. But subsequent to Mazza, I agree with Your Honor, California law doesn't apply to this case. So what do you think is the appropriate remedy in this case? Maybe remedy is not the right word. Maybe the procedure. What's the appropriate procedure? Should we remand the case back to the district court judge to consider Mazza? Or should we apply Mazza? What do you think is the appropriate procedure for us to follow in this case? Given that this is essentially how it's positioned right now, this is strictly a legal argument, there would be no benefit to remanding the case back to Mazza. Judge Gutierrez would have to rule when presented with the facts of this case that California law doesn't apply, that the plaintiffs have not brought forth any claims under California law, and he'd have to dismiss this case. And in which case, we'd end up back here in front of the Ninth Circuit again for a third time. We know from the allegations, the complaint, and the fact that Toyota did brief below the fact that Washington and New York law preclude the claims. And have argued in their briefing that Washington and New York law precludes the claims. That is sufficient record for this court to make a decision that the plaintiffs have not alleged viable claims and to affirm Judge Gutierrez's ruling. Well, probably, in terms of procedure, even if we were inclined in the direction you've argued, what we should probably do is send us an order out asking you and the appellant to say, what is the effect or significance of Mazza on this case? And let people be heard. Because I'm sure that the plaintiffs in the case don't necessarily agree that Mazza is the greatest opinion since sliced bread. Your Honor, I would say that it is the greatest opinion since sliced bread, but putting that aside, the truth is the plaintiffs, if they did not focus sufficient attention on the fact that they brought the issue that's raised by Mazza, can they have viable California claims with a Washington and New York resident, they didn't brief at their own peril, because clearly Toyota raised that as an issue. And raised it an issue before Judge Gutierrez, who decided to, who did in fact dismiss the case under California law, which is the best and only chance the plaintiffs had of alleging a viable class. And it was raised before this court in Toyota's brief, which the plaintiffs had an opportunity to reply to. So, you know, the plaintiffs saying we didn't know that Mazza was an issue, we didn't know this choice of law is an issue, they knew about it and they knew about it back in front of Judge Gutierrez. Your Honor, basically, as I indicated, whether you look at this case from the perspective of Washington and New York law, which has a safe harbor applicable to Toyota for essentially representing EPA, estimated gas mileage, or you look at this case under California law, the conclusion is the same. A manufacturer cannot be sued as a result of representing accurate EPA estimated mileage, and the manufacturer has no duty to disclose information that is different from, in addition to, or contrary to the EPA estimated mileage, and that is the Paduano decision. Well, what if the allegation is that Toyota went beyond the EPA estimates and said you, affirmatively, that you will get a certain number of miles per gallon with this car, and that was a misrepresentation. Would that be outside the Paduano situation? Well, I mean, that is the Paduano case, where it was alleged that Honda had made statements about fuel economy that was an excess or different than the EPA estimated MPG, but that's not at issue in this case. That's not an issue in this case? That is not at issue in this case. In fact, plaintiffs allege, although it's kind of difficult to navigate the plaintiff's complaint, but if you look at the plaintiff's complaint, which is Excerpt to Record, I think it's U.S. 6-35, it says that at Paragraph 2, Lines 21 and 22, this case does not, in other words, concern allegations of Toyota's affirmative misrepresentations. But the plaintiffs are basically alleging is, assume that Toyota, we're alleging that Toyota didn't say anything, but Toyota nonetheless had a duty to present information that was contrary to or different from the EPA estimates, and as you know from the holding in Paduano, at least as to California law, a manufacturer cannot be compelled to have to provide that information, and of course, under Washington, New York law, there are safe harbors for that situation. Okay. So did the plaintiffs allege, then perhaps I misstated the complaint, did the plaintiffs allege that Toyota did not merely advertise the Prius as having the estimated miles per gallon, but it was able to achieve that fuel efficiency under normal driving conditions? Would that be a different complaint? Not something different than the EPA estimate, but that it's not in fact an estimate, that you actually would be able to achieve this mile per gallon, mile per gallon activity under normal driving conditions, and it wasn't true. Let me make, just to reiterate, make sure I understand the question. So instead of having representations that here are the EPA estimates, basically Toyota, assume Toyota made a representation that, hey, those EPA estimates, you're going to get those, and you're going to get those under normal driving conditions? Right. That would be problematic. Right. Oh, I thought that was the assertion that was made in the, it's not. It is not. Okay. Now, as I said, Your Honor, this is a very tortured complaint. There's lots and lots of stuff in there, but the paragraph that Your Honor should focus on in terms of how, this is the direction on how to read this complaint, is paragraph two that says, the case is not based on a complaint, because for some reason, I have that in my mind that it's in there. So what, do you know right offhand where the complaint is in the excerpts of record? Yeah, let me give you the site. It is 6-35. Oh, you know, it may, it's because it's under seal. Maybe that's more problematic for you. The complaint's under seal? Yes. Okay. And, in fact, also, if you look at paragraph 46 of the plaintiff's complaint. Well, I don't want to discuss anything that's under seal. What we're discussing right now is not the under seal part, so we're okay. Okay. Plaintiffs affirmatively allege in paragraph 46, lines 16 through 19, the fuel economy estimates that Toyota advertised in print, on television, and on the Internet for TPH, that's the Toyota Prius hybrid, are those measured pursuant to the EPA. Is this the Fourth Amendment, Fourth Amendment complaint? I'm looking at the Fourth Amendment complaint, which I think is the opposite. It's the operative one. It is called the Second Amendment. Okay. Well, then, that's probably has been superseded, what you're reading from, right? If it's the Fourth Amendment, the Fourth, I thought the Fourth Amendment class action complaint was the operative complaint. I think I understand what's going on. The Fourth Amendment class action complaint was in Gertz. That was the case we just argued. Oh, I'm looking at the wrong case. And if Your Honor may, and perhaps if you're... Yep, I'm looking at the wrong case. Aberdeen is what I need to look at. Okay. Now, if you're adding up complaints, this actually is number four, but that probably creates more confusion. Okay. All right. So, okay, I'm looking, now I have the right record. Okay. So what I wanted to look at was on page, I think it's eight. This is the Second Amendment complaint, right? That's what I have in front of me, Your Honor. Go ahead. I'm trying to find what I'm looking for. Go ahead. Oh, okay. Counsel, could you just clarify something for me? Do I recall that in this case, it's a nationwide class alleged, but does it exclude California residents? Your Honor is correct. The allegations of the complaint specifically, paragraph one of paragraph two, one of the complaint at line, which is page one, lines nine through 11, indicate that this is a class action brought by plaintiffs on behalf of a class of all persons in the United States, parenthetical, excluding residents of the state of California or any of individuals who purchased or leased a Prius in California. So what, this case has a lot of histories in it to me. So why is that, that the class excludes California residents? Was there another case pending? The plaintiff, step back, I'll give, to reiterate a little history. Originally, this case was filed by Mr. Aberdeen as a nationwide class. The case went to a class certification hearing. Judge Gutierrez denied certification in sua sponte, dismissed the case for lack of subject matter jurisdiction under CAFA. Then it came up to the Ninth Circuit. The Ninth Circuit affirmed Judge Gutierrez's denial of class certification, but remanded the case based on the sua sponte dismissal. When the case was, when Mr. Aberdeen was substituted out of the case, and Post and Gray were added to the case, at the same time, plaintiffs, or a little bit before that, I apologize, plaintiffs filed a state court action with the same, essentially the same allegations, and that case has been stayed and is pending in Central Civil West. So the reason that you have the California purchasers carved out of this federal case is because plaintiffs have filed a California class action related to MPG representations in California state court. So counsel, okay, now I'm at EUS 15, which is the second minute complaint. I think I'm at the paragraph directly below the one you read, paragraph 46. And this is not sealed, right? This is not sealed. Okay. So I'm at paragraph 46. And I, this is what I was referencing when I thought the plaintiffs were alleging that even though Toyota was new, Toyota was referencing the EPA estimates, it in fact, the estimates that are advertised in print on television and on the Internet are those that were measured pursuant to the laboratory testing methods, however, it knew at all relevant times that the fuel efficiency numbers were grossly inflated and created reasonable consumer expectations that Toyota could not meet. So in other words, the plaintiffs were saying Toyota is new, that the cause that it was touting did not give the fuel economy that it does, basically. What the plaintiffs are saying in this paragraph is that Toyota represented the EPA estimated miles per gallon. Knowing, knowing that its cars did not get that fuel mileage. That's the plaintiff's allegation. But that issue was squarely addressed in Paduano because the same allegations were made against Honda. And what the California Court of Appeals said in Paduano is that aspect of Mr. Paduano's case is not actionable. Yes, Honda may have known something, but Honda has no duty to disclose information that in addition to, that's contrary to or different from the EPA estimates. What Honda did was had allegations that were different than EPA, that you will get these miles per gallon if you drive the car in a way, or at least alleged to be contrary to the facts. That's not this case. In this case, the plaintiff's real argument is when you really get down to it, Toyota, you didn't say anything. You just used the EPA estimates, and you didn't say anything. And you had an obligation to say something. But the law in California... Page 342 of the decision. Page 340, Paduano. It's 169 Cal 1453. Is that right? I believe that. Let me pull the case up. I have it down as page... I don't see a page 300 here. 1482, I apologize. There is nothing false or misleading about Honda's advertising with regard to its statements that identify the EPA fuel economy estimates for the two civic hybrids. Where does it say that they had no obligation if they knew something different to disclose that? This is where the court is doing the analysis, the preemption analysis. And it says as long as... What page? I'm sorry, this is the 1482 page. As long as a State's regulation does not require a manufacturer to provide a fuel estimate different from the EPA fuel economy estimate, or to make claims that go beyond or are contrary to what the Federal screen requires, the EPCA does not preempt such regulation. That doesn't say that if the car manufacturer has affirmative knowledge of the EPA fuel economy estimates, they have no obligation to disclose them. That the cars don't meet the EPA, that they don't have to disclose that. I think you're reading a little more into it than it says. It's no big deal. I was just curious as to where you got that. The implication of the statement, just to finish the thought, Your Honor, is if you have no duty, if a State's regulation, in other words, the UCL, the CLRA, or State common law, so long as it doesn't require the manufacturer to, in fact, disclose the type of information that the plaintiff has, it's not an obligation. The plaintiffs are saying Toyota has... Now, not disclose, not to do, not to do additional testing. That's what I read. That is saying that there is no requirement that the manufacturer do additional testing. I don't think it makes the other leap to say if they do it, then they don't have to disclose it. I don't, it's no big deal. I'm quibbling. Okay. Thank you, counsel. Your time has expired. Thank you, Your Honor. All right. Rebuttal. Okay. I just wanted to begin by saying that I agree with Judge Gould that if the Court is so inclined to want to, or is at least leaning towards deciding the case on choice of law issues or on whether or not California law can apply, I think it would be a good idea to have a rebuttal. We would definitely like to do additional briefing on that. But why didn't you brief that issue in your reply brief? Well, frankly, because the other side didn't really brief it either. I mean, they touched on it. It's the last issue, I believe, in their appellee's brief, and they didn't engage in a governmental interest analysis. They didn't engage in, I don't believe they cited any cases from the New York and Washington to show how the safe harbor is actually used in those states. They simply said conclusorily that those two states have safe harbors. They cited to two other states that have safe harbors that have had some case law, and that was the end of the issue. But they cited Maza and — They did cite Maza, and we did respond to it, saying that we thought that their analysis, because they essentially had no analysis, that it wasn't properly teed up for briefing, and because it had nothing to do with the court below's decision, and because Toyota had said in the court below's decision that it was a safe harbor. And so we said, well, fine, we're okay with essentially not getting into it. But, counsel, if I can jump in on this. If this court finds that there's no cause of action under California law, what would be the purpose of remanding to do a choice of law analysis under New York or — I forgot the other jurisdiction that you had alternatively pled in your complaint. New York and what other state was it? Washington. Well, I was suggesting actually that we do additional briefing here, not necessarily on remand, but I agree that it's likely that if there is not — my understanding of it is that if there is no cause of action under California law, then there is likely not one under those other states, and I believe that's Toyota's position, and I know of nothing that would suggest that that's not right. We do not agree that there is no cause of action under California law. The Paduano case, I think, has been misrepresented here. Essentially, the Paduano case was whether or not affirmative representations made in conjunction with an EPA estimate are shielded as preempted under the EPCA. The court found that they are not, that California — California UCL and CLRA law has a very active role in regulating how auto manufacturers market cars, and said that essentially that even though you can't have an EPA estimate, you can't have an EPA estimate. You cannot be liable solely for a misrepresentation of the EPA estimate. Statements made in conjunction with it are not actionable. Our cause of action is mainly based on the theory that omissions that are made in conjunction with an EPA estimate are likewise actionable. Under California law in 1975, the outboard marine case said that essentially omissions are simply the flip side of affirmative representations. There is ample case law that we've cited in our brief saying that the CLRA recognizes actionable omissions. There is no question that there, in fact, are actionable omission cases. The district court below would have those be limited to a certain — to safety-related and warranty cases, and our position was that is a subset of the overall UCL and CLRA law, which relates only to latent defect cases. But if the consumer is aware or perhaps has access to other information that's contrary, say, to the EPA information, does that make a difference in our analysis at this point? I don't think it does, Your Honor. In fact, in the Falk case, they specifically looked at that. And Judge Alsop said, look, in that case, there was ample — there were hundreds, if not thousands, of complaints on the Internet about the fact that these speedometers were failing. There was — there might have been other information out there. He said consumers are not under a duty to go and hit the books and hit Google and do that kind of research before buying a car. Judge Gutierrez seemed to say that because there had been some articles about the fact that the Prius was getting far less mileage than it was advertised as, that consumers should have been on notice of that. And our position is, even if that were true, even if it were true that, in fact, you know, once the first car rolls out of the lot, I believe is what he said, it's now out there, and everyone should be aware of it, and you buy it, you're in peril, even if that were so, we've alleged facts that a consumer, if they knew, would certainly have given pause to paying all that extra money to buy a Prius. We had allegations that the — that the director of the EPA had made a complaint to the — to Toyota and had been told, you know, that it's her driving habits that are at fault. There are other people who made complaints that are in our allegations that say that when they — I'm sorry, that when they complained, they were also told that it was their driving habits that were at fault. One of them was told that there's a 15,000-mile break-in period, so basically hang tight, you know, don't worry about it right now. Maybe in a year you can come back, and if your car isn't properly broken in and you're not getting the mileage that you had been promised, maybe then you've got a problem. Another one said take a long trip and, you know, basically count your own mileage and then come back to us and see what's going on. And, you know, so it's our — you know, it's our position that under the case law, those kinds of allegations of, you know, customer complaints, of internal testing, of prominent, you know, prominent members of the community complaining about their car not getting the mileage that they wanted, if those things were known, those would be something that someone would say, yeah, before I spend, you know, thousands of dollars extra on a car solely for the reason of getting extra mileage or better mileage. I mean, that's essentially why people buy Priuses. In the eMachines case, they made the — the California Court of Appeal made the — made the direct point of saying, look, you know, the Barden and Daugherty cases are inopposite, because those are cases — Barden, for instance, dealing with, you know, exhaust manifolds — that's something that people just don't care that much about. People don't have an expectation about whether it's steel tubing or iron that makes an exhaust manifold. But when people buy a computer, they expect that they're not going to lose all their data due to defective floppy disk drives. The same thing is true with the Prius. When people buy a Prius, the reason why they are buying it, in most cases, and Toyota's internal data showed that, was because they expected to be getting, you know, way premium mileage, 55 miles per gallon. Our complaint is — is quite simple. It's that Toyota can't say, and their defense seems to basically be, because the EPA has spoken here and we're required to put a Monroney sticker on the car, we can't be forced to say anything beyond that. And that is — I'm sorry. Are there any safety concerns raised by the omissions, as you call it? There are not. We're not making a safety-related argument. We're saying that there is a long history of cases under California law. We've cited many of them. The Day case, the Pastoria case, Morgan v. AT&T, MassMutual, and most recently, Collin v. E-Machines, all of them saying the UCL and the CLRA are very broad statutes. They're — they're not specific to, you know, safety or latent defects or those types of cases. They basically say if a — there doesn't even have to have been a representation at all, but if there's a representation, an omission, or other conduct that — that tends to deceive, that those things are actionable. And that's exactly what the — what the Court said. Now, there is a particular subset of case law that says where there are latent defects involved, they're going to put a limit on it, because as this Court recognized in the Wilson case, I believe from last year, if you don't find that subset of cases in latent product defect cases to be sort of carved out of the general duty not to deceive, you will then be warranting these types of latent defects forever and basically nullifying limited warranties. And the Court said as a policy matter, we're going to impose an extra limitation on — on that and say, okay, there's got to be an end to it. And if you're saying that there's a latent defect in this product, you know, you can't have — we're going to say as a matter of law, you can't have a reasonable expectation that the product is going to last forever and we're going to — as — as a Court, we're going to put a top end on that. And that's the end of the warranty. But this isn't that type of case. This isn't a case having to do with a defect. Like the E-Machines case, this is a case where from the day that these — that these cars were made available, Toyota was in sole possession of certain information and in far superior possession of other information that basically said that the reason why people buy these cars is not true. And that's why there were thousands of — of complaints. That's why the EPA director herself said, what's going on here? You know, I — I bought this car for the reason of getting better mileage and I'm not getting it. I could have bought a VW that runs on diesel and gotten better mileage. And — and instead of them actually — instead of Toyota actually looking at that and issuing — issuing additional information, doing a recall, putting something into the press, basically what Toyota said to the head of the EPA was, it must be your driving that's at fault. Get back to us after you try and change your driving habits. You know? So in our — in our — in our point of view, if the Court is likely to look at this as whether we've stated a cause of action under California law, we think we absolutely have. Paduano did not deal with omissions. And despite what the opposing counsel says, to the extent that there's dicta in the case saying that, you know, Toyota can't be, you know, made to say any additional information, I agree with Your Honor, who seemed to be saying that it could be that what they were saying was you don't have to do additional testing. But once you do it, you have a duty under California State law to make that known to consumers, because that's something that would be material and people want to know about. And that's, in fact, what the Federal District Court said in Dey — I'm sorry, in the True case, which is very similar. It basically said, just to — to quote it very briefly, it said, "...Congress intended to leave regulation of false advertising and unfair practices for auto manufacturers to the State." And this is, in fact, what — you know, precisely one of those cases where, you know, this is a State issue that is not preempted under Paduano, and Paduano simply didn't have occasion to decide whether, if a car manufacturer is in actual possession of internal data that directly contradicts the EPA, whether they should make that known. And the last thing I would say is that under the CFR, you know, if Toyota's response is, well, wait a minute, we can't be made to have two different masters, State and Federal law. What if we're in this impossible position of — of complying with both? The FTC guidelines at — I believe it's section 259 and cited in our briefing say specifically that a manufacturer is allowed to make an additional estimate in addition to the EPA estimate for miles per gallon. Specifically, there is statutory authority under Federal law just for this type of situation. So Toyota could say, look, the EPA estimate says 55. We've done a lot of testing right underneath that says you're really going to get something more like 40. All right. Thank you, counsel. Thank you to both counsel. The panel will confer, and we will prepare an order if we think it's necessary for supplemental briefing. Thank you very much. The case just ordered is submitted for decision by the court, and we are in recess until 9.30 a.m. tomorrow morning.
judges: Lemelle, Gould, Rawlinson